SAMUEL DOWNS, Appellant, *v.* EDGAR SPRAGUE and others, Respondents.

To explain the meaning of a technical term as "gas-fixtures," used in a contract, it is proper, in a controversy of which "gas-meters" is the subject, and in which such contract is introduced to prove a liability for "gas-meters," to ask a witness acquainted with the business, to state, whether from his experience as a gas-fitter, "gas-meters" are usually classified as "gas-fixtures."

It is not error for the court to refuse to charge that the facts proved raise a presumption of law of liability of the defendants, where there is also evidence to raise a contrary presumption. The question in such case is entirely within the province of the jury.

A witness had testified that the defendant never had any thing to do with the merchandise which was the subject of controversy, except to advise the plaintiff about shipping the same to the parties by whom it was ordered, and that they were ordered by and charged to other parties than the defendants.

*Held,* that in an action to recover from the defendants the value of the merchandise, it was not error for the court to charge the jury that if they believed the testimony of this witness they must find a verdict for the defendants.

APPEAL from the General Term of the Superior Court of New York, affirming judgment on a verdict in favor of the defendants.

The action was to recover the price of a quantity of gas-meters claimed to have been sold and delivered to the defendants.

There was evidence on the trial, tending to prove a sale and delivery of the meters to the defendants, from circumstances from which a sale and delivery might have been inferred. The defendants denied the purchase, and, on the trial, proved circumstances strongly showing that the meters were ordered by Dr. Naphegyi, another person, and that the articles were charged to the "Vera Cruz Gas-light company." One of the defendants, Gilbert R. Van Allen, was sworn as a witness for the defendants, proved the ordering of

the meters by Dr. Naphegyi, that the bill of the meters made out and charged to the "Vera Cruz Gas-light company" was given to him, and, as he was going to Vera Cruz, plaintiff requested him to take the bills along and collect them, which he, Van Allen, promised to do. The plaintiff introduced a written contract, made between one Isaac Ayres and the "Vera Cruz Gas-light company," of which the defendants were the assignees, in which their assignor reserved the exclusive right for the space of fifteen years to furnish gas pipes and fixtures for said gas-light company. This is claimed to be evidence that the defendants were to furnish these meters.

Three points are presented in the case in which there is claimed to be error. The first arises upon an objection to a question put to one James Boyle, one of plaintiff's witnesses, a gas-fitter, who went to Vera Cruz to do gas-fitting in connection with their works. The question was as follows: "From your experience as a gas-fitter, state whether gas-meters are usually classified as 'gas-fixtures?'" The second question arose upon a request of the counsel for the plaintiff to the court to charge the jury "that, upon the facts proven, the presumption of law is that the goods were purchased for the benefit of the defendants, either individually, or jointly with Naphegyi & Co." The court refused so to charge, and the plaintiff excepted. The third question was an exception to the charge of the judge, who charged as follows: "That if the defendants bought the goods, or if they bought them jointly with Naphegyi & Co., or if they were delivered to them and they used them, they are liable in this action for their value; but if they believed the testimony of Van Allen, they must find a verdict for the defendants." The exception was to so much of the charge as charged "that if the jury believed the testimony of the defendant Van Allen they must find a verdict for the defendants." The jury found a verdict for the defendants, upon which judgment was entered. Upon appeal to the General Term of the Superior Court, the judgment was affirmed, and from which an appeal is brought to this court.

*John E. Burrill*, for the plaintiff.

*A. J. Vanderpoel*, for the defendants.

Potter, J. 1. Upon the first point raised by the plaintiff, viz., whether it was error to ask a gas-fitter whether "gas-meters" are usually classified as "gas-fixtures," it may be said the question called for information, not to vary the terms of the agreement introduced, or the legal effect of evidence that had been offered, but to explain whether, in the known usage or trade of gas-fitting, "gas-meters" were included or known as "gas-fixtures." The propriety of the explanation will appear from the fact that the witness to whom the question had been put, had previously testified that the defendant, Van Allen, had sold the *gas-fixtures* in Vera Cruz; and, also, that the written agreement introduced gave the defendants the exclusive privilege of furnishing gas-fixtures. If *gas-meters* were known in the trade as "*gas-fixtures*," it increased the strength of the evidence in the case against the defendants. The testimony in this view was important. The question is, was the question legally admissible? There are many terms made use of in particular trades and occupations, and in commercial usage, which have known and established meanings in those particular callings or business, which are not so uniformly known to others outside of those departments of business. Between a manufacturer of meters, and a fitter up of gas-fixtures and gas-meters, the meaning of the terms referred to, may well be supposed to be understood. "Gas-meters" were not mentioned in the terms of this contract, unless it was included in the term "fixture." I think the inquiry was proper within the rules of admitting evidence. (1 Greenl. Ev. § 292.) It might have been different had the question been designed to prove a different meaning of a word actually used, than that which is ordinarily understood to be its plain, common and popular sense. The word "gas-meter" had not been used. The evidence was offered to show that in the trade, the word "meter" was not included in the term "fixture." This is not a violation of the general rule, that no

other words can be added or substituted by parol evidence, to the language employed by parties making a contract, than that which is furnished by the contract itself. In this I think the court committed no error.

2. It is very clear that the court committed no error in refusing to charge that the facts proved raised the presumption that goods were purchased for the benefit of the defendants, either jointly with others or severally. This was asking the court to take from the jury a question entirely within the province of the jury. There was evidence to raise the contrary presumption, and it was not therefore the duty of the court to charge as requested.

3. I have not been able to see the error in the charge of the judge in saying to the jury "that if they believed the testimony of the defendant Van Allen, they must find for the defendants." Van Allen had testified that the defendants never had any thing to do with the meters, except as he had before testified, which was, that he called on the plaintiff and advised him about the shipping of them, and he swears that the meters were ordered by Dr. Naphegyi, and that plaintiff desired him (Van Allen), when he was going to Vera Cruz, to take the bills along with him and collect them of the gas company, to whom they were charged. If this story was true, there could be no liability on the part of the defendants, and it was no error of the judge to say so to the jury.

I think the judgment should be affirmed.

WRIGHT, J. The three exceptions in the case will be briefly considered:

1. As to the question to the plaintiff's witness Boyle, on his cross-examination, viz.: "From your experience as a gas-fitter, state whether gas-meters are usually classified as gas-fixtures?" The case states that the question was not objected to on the ground of form; but the precise objection taken, if any, is not stated. Permitting the question to be answered is not error that should lead to a reversal of the judgment. The witness, on his direct examination, had used the term "gas-fixtures," and it was also used in the agree-

ment that had just before been read by the plaintiff as a part of his case.   The inquiry was well enough, by way of explaining the writing.   But, if strictly improper, the answer elicited could, by no possibility, have prejudiced the plaintiff.

2.  The plaintiff's counsel requested the court to charge the jury that, upon the facts proven, the presumption of law is, that the goods were purchased for the benefit of the defendants, either individually or jointly with Naphegyi & Co. This request was properly refused.   Whether the meters were purchased for the defendants' benefit, in any way, was a question sharply litigated on the trial, and in respect to which there was not only conflicting evidence, but it strongly preponderated in favor of the conclusion that they were purchased for the exclusive benefit of the Vera Cruz Gas-light company.   Though the defendants were assignees of a contract with Naphegyi & Co. to erect gas-works and lay street mains in the city, neither they nor their assignees were bound, in any way, to furnish meters for the use and benefit of the company.   It was no part of their contract.   Nor was there any evidence that they assumed to furnish them under their contract; but, on the contrary, the proof tended strongly to show that they were bought by and on the credit of the gas company, and that such company employed and paid the defendants for putting them into the building, where gas was introduced as a distinct and independent matter.   In this state of the case, the proposition was an absurd one to be given to the jury, that it was a legal presumption that the meters were purchased for the benefit of the defendants.

3.  The court charged that if the defendants bought the goods, or if they bought them jointly with Naphegyi & Co., or if they were delivered to them, and they used them, they are liable in this action for their value; but if they believed the testimony of the defendant Van Allen, they must find a verdict for the defendants, otherwise their verdict must be for the plaintiff; that the plaintiff was entitled to a verdict, unless the jury should find, by evidence sufficient to rebut the legal presumption, that the credit was given to Naphegyi & Co., and not to the defendants.   There was an excep-

tion to so much of the charge as charged "that if the jury believed the testimony of the defendant Van Allen, they must find a verdict for the defendants."

If either party had reason to complain of this charge, in all its parts, it was the defendants, and not the plaintiff. The meters in question were ordered by and charged to the gas company on the books of the plaintiff, and it was not until the company failed to make payment, that there was any suggestion or pretense that the sale was made to the defendants. It is very apparent, from the undisputed evidence, that the credit was given to Naphegyi & Co., and that it was an after-thought to charge any liability upon the defendants. All the testimony offered by the plaintiff with the view of connecting the defendants with the purchase was this: In February, 1855, one Isaac W. Ayres entered into a contract with Doctor Naphegyi & Co., of Vera Cruz, for the erection of gas-works, and the laying of street mains in Vera Cruz. The contract was specific as to the work to be done, and the materials to be furnished by Ayres, and was confined exclusively to the construction of the works for manufacturing gas, and to laying the mains. Ayres was to have $25,000 for doing the work, to be paid to him by the gas company, at specified periods; and, as a further compensation, was to share equally with the company in the profits of the first two years of the company's business. The contract was assigned by Ayres to the defendants, and they assumed the performance of the work. About the time the contract was concluded, Naphegyi, who was in New York, purchased a bill of meters from the plaintiff. These meters were found to be too large, and he, therefore, filled up another order, and sent it to New York, by one of the defendants' workmen. These meters (which was the bill in dispute) were delivered by the plaintiff, at the foundry of Ayres & Floyd (who were employed by the defendants to do some of the work intended for the Vera Cruz Gas-light company under the contract mentioned), and were afterward, with other work belonging to the defendants, which they had caused to be done in New York in fulfillment of

the Ayres contract, shipped to Vera Cruz on board a vessel owned by one of the defendants. While the contract for erecting the gas-works was being performed, the defendants sent one of their workmen to Vera Cruz to do gas-fitting, and other work in connection with the gas house, and, while there, he was employed by the gas company to put up the meters, for which services the company subsequently compensated the defendants. Yet, upon these uncontroverted facts, the judge charged the jury that the plaintiff was entitled to recover the value of the meters, unless they should find by evidence sufficient to rebut the legal presumption, that the credit was given to the gas company, and not to the defendants. There can be no pretense that the plaintiff was entitled to recover at all against the defendants, unless the meters were actually sold to them, or, so far as third persons were concerned, themselves and the gas company were to be treated as copartners. Any such theory, if it rested on any proper foundation, was utterly exploded by the testimony of Van Allen, and the court well and properly said to the jury, that if they believed his testimony, the defendants were entitled to a verdict. That testimony conclusively established the non-liability of the defendants. It was positive and explicit that they had nothing to do with the meters, either in their purchase or use, and had no interest in them, but that they were ordered by Naphegyi & Co.; and all that he and his firm did in relation to them was as the friends of Naphegyi and the plaintiff. And in this he was corroborated by both the other defendants, and by Boyle, the witness for the plaintiff.

There was, therefore, no error in the charge as to the effect of the testimony of Van Allen. If he was to be credited, that was the end of the plaintiff's case.

The judgment should be affirmed.

All concur.

Judgment affirmed.